**PYRAMID LAKE PAIUTE TRIBE OF INDIANS, Plaintiff,**

v.

**Donald P. HODEL, Secretary of the Interior, Defendant–Appellant,**

v.

**TRUCKEE–CARSON IRRIGATION DISTRICT; Newlands Project Water Rights Holders; State of Nevada; Fallon Paiute–Shoshone Tribes, Defendants–Intervenors–Appellees.**

**No. 88–15116.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 11, 1989.

Decided Aug. 9, 1989.

Robert S. Pelcyger and Fredericks & Pelcyger, Boulder, Colo., for plaintiff Pyramid Paiute Tribe of Indians.

Dirk D. Snell, Atty., Dept. of Justice, Washington, D.C., for defendant-appellant Secretary of the Interior.

Frederick G. Girard and Kronick, Moskovitz, Tiedemann & Girard, Sacramento, Cal., for defendant-intervenor-appellee Truckee–Carson Irrigation Dist.

Brian Chally, Deputy Atty. Gen., State of Nev., Carson City, Nev., for defendant-intervenor-appellee State of Nev.

Gordon H. DePaoli and Woodburn, Wedge & Jeppson, Reno, Nev., for defendants-intervenors-appellees Newlands Project Water Rights Holders.

Before CHAMBERS, Senior Circuit Judge, BROWNING and BEEZER, Circuit Judges.

JAMES R. BROWNING, Circuit Judge:

The Secretary of the Interior and the Pyramid Lake Paiute Tribe of Indians appeal an order compelling the Secretary to release 21,435 acre feet of water from the Stampede Reservoir on the Little Truckee River to the Lahontan Reservoir for irrigation of lands in the Newlands Project, a federal reclamation project operated under contract by the Truckee–Carson Irrigation District (District). We reverse and remand.

I

This litigation concerns the administration of the decree entered in 1973 in *Pyramid Lake Paiute Tribe of Indians v. Morton*, 354 F.Supp. 252 (D.D.C.1973). Judge Gesell's opinion summarizes the background facts. *See also Nevada v. United States*, 463 U.S. 110, 114–16, 103 S.Ct. 2906, 2910–11, 77 L.Ed.2d 509 (1983).

The underlying dispute involves the waters of the Truckee River, which if not diverted, naturally flow into Pyramid Lake

within the Tribe's reservation. Some of the river's water is diverted at the Derby Dam through the Truckee Canal to the Lahontan Reservoir for the benefit of the District and, ultimately, of Newlands Project Water Rights Holders. *See Pyramid Lake I,* 354 F.Supp. at 259 (map). Truckee River water can be stored either in Stampede Reservoir upstream of Derby Dam or in Lahontan Reservoir downstream of Derby Dam. Water stored in Stampede Reservoir can be released to flow to Pyramid Lake for the benefit of the Tribe and its fisheries or diverted to Derby Dam to flow to Lahontan Reservoir for irrigation purposes. Once water is diverted to Lahontan Reservoir at Derby Dam, it cannot be returned upstream to benefit the Tribe. This is the critical factor underlying the present dispute.

By the late 1960s, diversion of water from the Truckee River had seriously depleted Pyramid Lake and "had the effect of making fish native to the Lake endangered protected species, and ha[d] unsettled the erosion and salinity balance of the Lake to a point where the continued utility of the Lake as a useful body of water [was] at hazard." *Id.* at 255.

In 1967 the Secretary of the Interior issued a general regulation providing for adoption of operating criteria for management of the waters of the Truckee River, thus "initiat[ing] Departmental controls, lacking in the past, to limit diversions by [the District] from the Truckee River within decreed rights, and thereby mak[ing] additional water available for delivery to Pyramid Lake." 43 C.F.R. Part 418, § 418.1(b) (1988). A committee composed of representatives of various governmental agencies under the chairmanship of the Regional Director of the Bureau of Reclamation was directed to recommend operating criteria, for the purpose, among others, of "minimiz[ing] the diversion of flows of the Truckee River for District use in order to make available to Pyramid Lake as much water as possible." *Id.* at § 418.3(a)(2). The regulation further provided that "[t]he United States may temporarily store part of the District's supply in upstream facilities provided that water so stored which is

within the District's entitlement shall be credited to the District and shall be released to the District at its request." *Id.* at § 418.4(f).

Beginning in 1967 the Secretary of the Interior implemented this general regulation by periodically issuing operating criteria to govern diversions of water from the Truckee to Lahontan Reservoir for use on the Newlands Project. *Pyramid Lake I,* 354 F.Supp. at 255.

In 1970 the Tribe initiated litigation in the District Court of the District of Columbia challenging the operating criteria in effect at that time on the ground that in issuing them the Secretary "failed to fulfill his trust responsibilities to the Tribe by illegally and unnecessarily diverting water from Pyramid Lake." *Id.*

Judge Gesell held the Secretary was obligated by his trust responsibilities to the Tribe to "insure, to the extent of his power, that all water not obligated by court decree or contract with the District goes to Pyramid Lake," *id.* at 256, and that the Secretary had failed to so do. The court noted "that the manner in which the Secretary chooses to manage and commit water stored in Stampede Reservoir will have an effect on the situation," *id.* at 258, and cautioned that the contract between the Secretary and the District "cannot be interposed as an obstacle to the Lake receiving the maximum benefit from the upper Truckee flow into Stampede which may be available under a reasonable and proper interpretation of the decrees. The Secretary's trust obligations to the Tribe are paramount in this respect." *Id.*

Judge Gesell invalidated the challenged operating criteria and in 1973 approved new operating criteria to be amended only by written agreement of the parties or by order of the court. *Id.* at 260–62. The 1973 operating criteria reflected the objective of maximizing storage in Stampede Reservoir and minimizing diversion to Lahontan. *Id.* at 262. They provided that when a specified amount of uncommitted water was available in Stampede Reservoir, the water allotted to the District would not

be diverted to Lahontan Reservoir, but instead would be retained in Stampede Reservoir, and the District would be given credit therefor. *Id.* at 264 (1973 operating criteria § B(3)). The criteria further provided that water credited to the District in Stampede Reservoir at the end of the 1973 water year would be carried over as a credit in Stampede Reservoir for the 1974 water year. *Id.* at 264–65 (1973 operating criteria § B(8)).

The Secretary did not appeal Judge Gesell's decision. This court subsequently upheld the decree against collateral attack. *See Truckee–Carson Irrigation Dist. v. Secretary of Dep't of Interior,* 742 F.2d 527, 530 (9th Cir.1984).

In 1985 the case was transferred from the District of the District of Columbia to the District of Nevada. The District of Nevada retained jurisdiction to oversee implementation of the 1973 decree and thus to enforce the Secretary's fiduciary duties to the Tribe. Because Pyramid Lake is home to the cui-ui fish and a species of cutthroat trout that have been endangered or threatened with extinction by past reductions in the flow of Truckee River water into the Lake, the district court's jurisdiction was also invoked under the Endangered Species Act, 16 U.S.C. §§ 1531–1543. *See Carson–Truckee Water Conservancy Dist. v. Watt,* 549 F.Supp. 704, 706 (D.Nev.1982), *aff'd in part and vacated in part, sub nom. Carson–Truckee Water Conservancy Dist. v. Clark,* 741 F.2d 257, 260 (9th Cir.1984).

The present dispute arose when the Secretary sought approval of proposed operating criteria to govern diversions from the Truckee River during 1987. The District objected to the 1987 operating criteria. A bench trial was held in April 1987. Among the issues raised was whether the proposed 1987 operating criteria allowed the District to carry over to 1988 a credit for water retained in Stampede Reservoir for use by the District during 1987, but not used. The District contended the 1987 operating crite-

ria allowed carry over of this Stampede Reservoir "credit water"; the Secretary and Tribe argued that it did not. The court took the matter under submission but did not decide it during the 1987 water year, which ended on October 31. In November 1987, after the close of the 1987 water year, the Secretary moved to dismiss as moot both the Secretary's petition for approval of the 1987 operating criteria, and the District's objections to approval. The court granted the motion on January 15, 1988.

Meanwhile, in December 1987, the District requested the release of its Stampede Reservoir "credit water" to Lahontan Reservoir. While this request to the administrative authorities was pending, the district court's January 15 order of dismissal was filed. On April 5, 1988, the Regional Director of the Bureau of Land Management denied the District's request for release of the water on the ground that under the terms of the 1987 operating criteria the Stampede Reservoir "credit water" could not be carried over beyond the 1987 irrigation season. On June 6, 1988, the District filed a motion in the district court challenging this order and asking the district court to release the water. On August 9, 1988, the district court granted the motion. This appeal followed.

## II

For reasons that will appear, we questioned our jurisdiction sua sponte and requested additional briefing.[1] *See Liberty Mutual Ins. Co. v. Wetzel,* 424 U.S. 737, 740, 96 S.Ct. 1202, 1204–05, 47 L.Ed.2d 435 (1976). We are now satisfied appellate jurisdiction exists.

Releases of water pursuant to the court's order of August 9 began on August 11, 1988. The next day the Tribe filed an emergency motion in this court for stay pending appeal.[2] The Tribe argued that "[o]nce the water is diverted at Derby

---

1. The Tribe's motion to strike a letter from the Secretary to Nevada Senator Chic Hecht, filed with the District's supplemental brief, but not presented to the court below, is granted. *See*

*Kirschner v. Uniden Corp.,* 842 F.2d 1074, 1077–78 (9th Cir.1988).

2. The Secretary orally joined the Tribe's motion on August 15, 1988.

Dam, it cannot be retrieved," and "[a]pproximately 1,000 acre feet of water will be irrevocably lost to the endangered cui-ui every day that Judge Thompson's Order remains in effect." The District responded: "The Tribe's protestations that the 'water will be lost forever' are wrong." The District explained that if the Tribe prevailed, an amount of water equal to the amount released under the order could be accumulated in Stampede Reservoir out of future allotments to the District and allowed to flow to Pyramid Lake when needed without diversion to Lahontan Reservoir.[3]

■ With this representation before us, we denied the stay and established an expedited briefing schedule. We are informed the district court's order releasing the 1987 Stampede Reservoir "credit water" was fully executed. The question is whether this appeal has been mooted by execution of the order to be reviewed. We conclude it has not.

As we said in *United States v. Alder Creek Water Co.*, 823 F.2d 343, 345 (9th Cir.1987), a "case becomes moot when interim relief or events have deprived the court of the ability to redress the party's injuries." In *Garcia v. Lawn*, 805 F.2d 1400, 1403 (9th Cir.1986), we said, "the question is not whether the precise relief sought at the time the application for an injunction was filed is still available. The question is whether there can be any effective relief."

Applying these principles in *Northwest Environmental Defense Center v. Gordon*, 849 F.2d 1241 (9th Cir.1988), we reversed the district court's holding that a challenge to regulations governing the 1986 salmon fishing season was mooted by the close of the season. We think *Northwest Environmental* controls this case.

The plaintiffs in *Northwest Environmental* challenged a fishery management plan increasing the permissible harvest of coho salmon in the 1986 fishing season. *Id.* at 1244. The 1986 season was completed during the course of litigation. The district court dismissed the case as moot because "no decree by the court ... can undo the harvesting of coho salmon that took place during the 1986 season." *Id.* We noted the allegedly illegal increase in the 1986 harvest could "have continuing effects on the population of Oregon coho salmon, and in particular on the number of coho that will be returning to Oregon waters to spawn in 1989 and on their progeny. If the 1986 measures did cause damage to the coho population in violation of federal law, the damage can still be repaired or mitigated—obviously not by restoring the fish harvested in 1986, but by allowing more fish to spawn in 1989." *Id.* at 1245. We added, "[t]he fact that the alleged violation has itself ceased is not sufficient to render a case moot. As long as effective relief may still be available to counteract the effects of the violation, the controversy remains live and present." *Id.*

So too in this case. The survival of the cui-ui and the Lahontan cutthroat trout is directly related to the amount of water allowed to reach Pyramid Lake from the Stampede Reservoir during the spawning season. *Carson–Truckee Water Conservancy Dist. v. Watt*, 549 F.Supp. at 710–11. If the Pyramid Lake fishery was or may be impaired by the diversion of the Stampede Reservoir "credit water" to the Lahontan Reservoir in 1988 pursuant to the district court's order, thus reducing the amount of water that might be available to flow to Pyramid Lake in the future, that harm can be remedied by storing in Stampede Reservoir an equivalent amount of water from the District's future allotment to be available for possible use during future spawning seasons—just as the District said it could in its opposition to the Secretary's motion to stay the district court's order.

3. The District's opposition papers stated: "[I]f the appeal in this matter is expedited and if the lower court's decision is reversed and the Tribe prevails ..., the 21,435 acre feet can be 'repaid' to Stampede Reservoir.... Water which would ordinarily be diverted to Lahontan may be al-
lowed to flow to Pyramid Lake and water which ordinarily would be released from Stampede Reservoir may be held there to be released after the 21,435 acre feet is repaid. The Tribe's protestations that the 'water will be lost forever' are wrong."

Since effective relief may still be available if we conclude the district court's order was issued in error, the appeal from the order is not moot.[4]

### III

■ We turn to the merits. The question presented is narrow: whether the district court properly rejected the Regional Director's interpretation of the 1987 operating criteria as not providing for the carry-over of the District's "credit water" from the 1987 irrigation season to succeeding years.[5]

With the issue so framed, appellees' burden is heavy. They seek to invalidate agency action resting on an interpretation by the agency of its own regulations, and judicial deference to such action is particularly great.

4. We need not consider other substantial grounds advanced by appellants for concluding this appeal is not moot, based upon appellees' "conditional undertaking" to make restitution in future years if it were determined the order releasing "credit water" was erroneously issued.

5. Appellants contend the district court was precluded from deciding this question anew in its August 9, 1988 order because of the court's January 15, 1988 order dismissing as moot the Secretary's petition for approval of the 1987 Criteria and the District's objections to that petition, including the objection that the 1987 Criteria did not provide for carry-over of Stampede "credit water."

Principles of claim and issue preclusion are triggered by the existence of a final judgment. *Nevada v. United States*, 463 U.S. 110, 129–30, 103 S.Ct. 2906, 2917–18, 77 L.Ed.2d 509 (1983) (claim preclusion); *In re Duncan*, 713 F.2d 538, 541 (9th Cir.1983) (issue preclusion). Under Fed.R.Civ.P. 54(b), an order "which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" is not a final order in the absence of certification that "there is no just reason for delay and upon an express direction for the entry of judgment." It does not appear the district court's order of January 15, 1988 was so certified. Therefore it "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed.R.Civ.P. 54(b). Hence it has no preclusive effect. *United States v. Desert Gold Mining Co.*, 433 F.2d 713, 715 (9th Cir.1970).

Nonetheless, the orderly administration of lengthy and complex litigation such as this re-

David G. Houston, Regional Director of the Bureau of Reclamation, rejected appellees' request for return of the Stampede Reservoir water credited to the District in 1987 on the basis of his interpretation of the Secretary's 1987 operating criteria. As the Regional Director said, the requested water "was not needed to meet [the District's] requirements in 1987 and there was no provision in the [1987 operating criteria] for carry-over of this water for future use. Therefore, the credit no longer exists."

The law is settled that "an agency's interpretation of its [own] regulations is 'of controlling weight unless it is plainly erroneous or inconsistent with the regulation[s].' " *Marathon Oil Co. v. United States*, 807 F.2d 759, 765 (9th Cir.1986) (*quoting Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)).

quires the finality of orders be reasonably certain. This policy is served by the doctrine of law of the case, which counsels against reopening questions once resolved in ongoing litigation. *See* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4478 at 788–89. Under that doctrine, however, a trial court has discretion to reconsider its prior, non-final decisions. "[T]he major grounds that justify reconsideration involve an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id.* at 790. A decision to depart from the principle of finality is reviewed for abuse of discretion. *Desert Gold Mining*, 433 F.2d at 715.

No abuse of discretion appears in this case. The continuing validity of the 1987 Stampede credit was undoubtedly a "live" issue when the January 15 order was filed. The court apparently issued its order declaring in general terms that all objections to the 1987 operating criteria were moot because no party reminded the court of this exception. Accordingly, reexamination of the court's ruling was justified by "the need to correct a clear error."

*Arizona v. California*, 460 U.S. 605, 615–28, 103 S.Ct. 1382, 1389–96, 75 L.Ed.2d 318 (1983), is not to the contrary. There the Supreme Court refused to "extrapolate wholesale law of the case into the situation of [its] original jurisdiction" in order to relitigate an issue that had been decided nineteen years earlier. *Id.* at 619, 103 S.Ct. at 1391–92. As the Court noted, *Arizona v. California* did "not present the issue of the proper standard to be applied when a district court … retains jurisdiction." *Id.* at 619 n. 9, 103 S.Ct. at 1391 n. 9.

The district court sought to avoid according Mr. Houston's determination such deference on the ground he stood "about as low on the bureaucratic totem pole as one can get for the purpose of rule interpretation." Under the Secretary's general regulations, the Regional Director chaired the interdepartmental committee charged with responsibility for recommending the 1987 operating criteria. 43 C.F.R. § 418.3(a). In any event, any suggestion that the Regional Director's interpretation did not reflect the views of the Secretary is belied by the Secretary's vigorous defense of that interpretation in the court below and in this court.

The district court classified Mr. Houston's ruling as "an interpretative opinion[ ]" and therefore entitled to limited weight. The cases cited by the district court involved interpretation of a statute rather than the agency's own regulations, and "[w]hen the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order." *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *accord Montana Power Co. v. Environmental Protection Agency*, 608 F.2d 334, 344–45 (9th Cir.1979). Moreover, even "merely intra-agency, non-public guidelines" are to be accorded nothing "less than normal deference as long as they are a reasonable interpretation" of applicable regulations and statutes. *Id.* at 345.

■ We regard the Regional Director's interpretation of Paragraph III.E of the 1987 operating criteria as not providing for the carry over of Stampede Reservoir "credit water" to the 1988 water year to be

a reasonable interpretation, and therefore binding on the courts.[6]

In the course of the bench trial on appellee's objections to the 1987 criteria, counsel for the water users recognized that "by clear implication, the Stampede credit option does not allow the credit to carry over into 1988"; indeed he asserted that "all the evidence shows" that the proposed 1987 criteria "provide no carry over for next year for the project or the farmers out of Stampede Reservoir." Even in this court, counsel for the District concedes the 1987 operating criteria to be "ambiguous."

Paragraph III.E of the amended 1987 operating criteria conditions release of the District's Stampede Reservoir credit water upon lack of sufficient water at Lahontan Reservoir to meet the District's maximum allowable diversion requirements "during the irrigation season." As the Secretary suggests, the reasonable implication is that the "irrigation season" in which the deficiency must occur and in which the release may be ordered is the 1987 irrigation season to which alone the operating criteria related. As the Secretary also points out, the absence from the 1987 operating criteria of an express provision for carry over of Stampede credit water to the next water year is in sharp contrast to the inclusion of such a provision in all other operating criteria since 1973, and strongly suggests that no carry over of Stampede credit water from water year 1987 to 1988 was intended. The suggestion is strengthened by the fact that in April of 1988 the Secretary submitted proposed final or permanent operating criteria to the court for approval that clearly confined the release of credit

---

**6.** Paragraph III.E of the amended 1987 operating criteria reads as follows:

E. *Stampede Reservoir Credit*—The difference in 1987 end-of-June Lahontan Reservoir storage between that achieved by 1987 OCAP (target = 215,000 AF) and that which could have been achieved by establishing the target at 290,000 AF will be calculated and established as a credit in Stampede Reservoir. The maximum amount of storage credit in Stampede Reservoir would be 75,000 AF. If sufficient water is not available from the Carson River or Lahontan Reservoir to meet the max-

imum allowable Diversion requirements for the Carson Division of 335,000 AF during the irrigation season, water, to the extent of the credit accumulated in 1987, will be released from Stampede Reservoir to be diverted into and through the Truckee Canal for agricultural use in the Carson Division to meet that requirement. The Truckee Division will be served directly from the Truckee Canal, as usual, in meeting the overall diversion requirement of 362,000 AF. Credit could not infringe on or interfere with the flood function of Stampede Reservoir.

water to the water year in which it accrues.[7]

As originally submitted to the court for approval in January 1987, the 1987 operating criteria provided for diversion of water from Stampede to Lahontan sufficient to store 290,000 acre feet of water in Lahontan by the end of June, and made no provision for a Stampede Reservoir water credit. Paragraph III.E was added as an amendment in April 1987. It made two changes. The first reduced the end-of-June storage in Lahontan from 290,000 acre feet to 215,000 acre feet. The second provided for the retention of the differences of 75,000 acre feet in Stampede Reservoir to be released as needed to meet the District's requirements.

Increasing the retention of water in Stampede preserved the Secretary's flexibility in meeting whatever contingencies might arise in the course of the year, and avoided the substantial loss from evaporation and other causes associated with diversion to Lahontan. The Secretary explains that it was anticipated that the District would oppose the reduction of end-of-June storage in Lahontan, as indeed it did. The Stampede credit provision was intended to prevent delay in implementation of the 1987 operating criteria during litigation over its approval by providing assurance to the parties and the court that the 75,000 acre feet of water would be available in Stampede for release to Lahontan during the 1987 water year if the court later determined the reduction was not justified. The Secretary's explanation is consistent with the omission of a carry over of the Stampede credit water to the following water year. Government counsel did in fact make this argument to the court, apparently with the desired effect.

Since the Secretary's interpretation of his regulations was reasonable, it was entitled to controlling weight.[8]

REVERSED AND REMANDED.

---

7. In adopting the proposed final operating criteria the Secretary said this provision was "unlike Stampede Credit procedures introduced in previous" operating criteria because it "permits no carry-over storage to another year." The District contends this reflects an interpretation of the 1987 criteria by the Secretary that is inconsistent with that of the Regional Director, and that an "administrative determination which is not consistently maintained is entitled to little, if any, deference." *United States v. Alpine Land & Reservoir Co.,* 697 F.2d 851, 856 (9th Cir. 1983). We think the District puts more weight upon a questionable implication from an informal comment than it will reasonably bear.

8. The district court concluded its opinion with "the caveat that this order represents an interpretation of the 1987 interim [operating criteria] and nothing else." We decline to consider various other issues argued by the parties but not decided by the district court.