**SEIKO EPSON CORPORATION, a Japan corporation; Epson America, Inc., a California corporation; and Epson Portland, Inc., an Oregon corporation, Plaintiffs,**

v.

**GLORY SOUTH SOFTWARE MANUFACTURING, INC., a California corporation; Butterfly Print Image Corp., Ltd, a Hong Kong company; Ink Lab (H.K.) Co., LTD, a Hong Kong company; Nectron International, Ltd, a Texas company; Nine Star Image Co., Ltd, a China company; Nine Star Technology Co., Ltd, a California company; Town Sky, Inc., a California corporation; Zhuhai Gree Magneto–Electric Co., Ltd, a China company; MMC Consumables, Inc., a California company; Tully Imaging Supplies, Ltd, a Hong Kong company; Inkjet Warehouse.Com, Inc., a Connecticut corporation; Wellink Trading Co., Ltd, a China company; Ribbon Tree (Macao) Trading Co., Ltd, a China company; Ribbon Tree (USA), Inc., dba Cana–Pacific Ribbons, Inc., a Washington company; Apex Distributing, Inc., a Washington company; DataProducts USA, LLC, a California limited liability corporation; Master Ink Co., Ltd, a Hong Kong company; and Acujet U.S.A., INC., a California company, Defendants.**

No. 06–CV–236–BR.

United States District Court,
D. Oregon.

Jan. 19, 2010.

Opinion Denying Clarification and
Modification March 10, 2010.

**1234**

David W. Axelrod, Connie C. Kong, Schwabe, Williamson & Wyatt, P.C., Portland, OR, Aaron B. Craig, Harold A. Barza, J.D. Horton, Ryan S. Goldstein, Tigran Guledjian, Quinn Emanuel Urquhart Oliver & Hedges, LLP, Los Angeles, CA, for Plaintiffs Seiko Epson Corporation; Epson America, Inc.; and Epson Portland, Inc.

Timothy S. Dejong, Stoll Stoll Berne Lokting & Schlachter, PC, Portland, OR, Edward O'Connor, Stephen M. Lobbin, The Eclipse Group LLP, Irvine, CA, for Defendants Glory South Software Manufacturing, Inc.; Butterfly Print Image Corp., LTD; Ink Lab (H.K.) Co., LTD; Nectron International, LTD; Nine Star Image Co., LTD; Nine Star Technology Company, LTD; Town Sky, Inc.; and DataProducts USA, LLC.

Charles R. Sutton, Joseph M. Liu, Law Offices of Roger C. Hsu, Pasadena, CA, Bert P. Krages II, Portland, OR, for Defendant Zhuhai Gree Magneto–Electric Co., Ltd.

Chintan Panchal, Jacob S. Pultman, Allen & Overy LLP, New York, NY, Steven M. Wilker, Tonkon Torp LLP, Portland, OR, for Defendants Tully Imaging Supplies, Ltd.; InkJetWarehouse.Com Inc., and Wellink Trading Co., Ltd.

Kathleen Carroll Bricken, Garvey Schubert Barer, Portland, OR.

## OPINION AND ORDER

BROWN, Judge.

This matter comes before the Court on the Motion (# 197) of Plaintiffs and Counter–Defendants Seiko Epson Corporation; Epson America, Inc.; and Epson Portland, Inc. (referred to collectively as Seiko Epson) to Dismiss and Strike or, in the Alternative, to Stay and Bifurcate Litigation of the Antitrust Counterclaims and Affirmative Defenses of Defendants Ninestar Image Co. Ltd.; Ninestar Technology Company, Ltd.; Town Sky, Inc.; and DataProducts USA LLC (referred to collectively as Ninestar) that are asserted in Ninestar's First Amended Answer, Affirmative Defenses, and Counterclaims (First Amended Answer).

Without obtaining leave of Court, Ninestar attached a proposed Second Amended Answer, Affirmative Defenses and Counterclaims (Second Amended Answer) to its Memorandum in Opposition to Seiko Epson's Motion to Dismiss. The Court, *nunc pro tunc* as of November 3, 2009, **GRANTS** Ninestar leave to file its Second Amended Answer and **DISMISSES with prejudice** all Counterclaims asserted in Ninestar's First Amended Answer that are not asserted in the Second Amended Answer. The Court also **GRANTS** Ninestar leave to amend its proposed Second Amended Answer to add the language "and in obtaining a multimillion dollar penalty against Defendants in the International Trade Commission" in paragraph 24 of Ninestar's Affirmative Defense and paragraph 24 of Ninestar's Counterclaims.

For the following reasons, the Court also **GRANTS in part** and **DENIES in part** Seiko Epson's Motion to Dismiss and Strike or, in the Alternative, to Stay and Bifurcate Litigation of the Antitrust Counterclaims and Affirmative Defenses asserted in Ninestar's Second Amended Answer.

## *BACKGROUND*

In its Corrected First Amended Complaint, Seiko Epson asserts a single claim for Patent Infringement under 35 U.S.C. § 271 alleging Ninestar has infringed multiple patents issued to Seiko Epson between October 1992 and October 2005 relating to printer ink cartridges.[1]

In its First Amended Answer, Ninestar denied Seiko Epson's allegations and asserted affirmative defenses and counterclaims for damages and sought declaratory relief. Ninestar alleged Seiko Epson has used and conspired to use a litigation strategy purportedly to enforce its patents but for the actual purpose of restraining trade and monopolizing the market in inkjet cartridges used in Epson printers in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2. Ninestar also alleges under Oregon law Seiko Epson's conduct constitutes intentional and negligent interference with Ninestar's prospective economic advantage.

---

1. In a related case, *Seiko Epson Corp. v. Glory South Software Manufacturing, Inc.,* 06–CV–477–BR *(Glory South II),* Seiko Epson alleges Ninestar has infringed other patents. The issues involved in both cases, however, are substantively identical, and Seiko Epson filed a similar Motion (# 177) in that action.

Seiko Epson moved to dismiss Ninestar's Antitrust and Tort Counterclaims and, if the Court did not dismiss the Antitrust Counterclaims, to stay and to bifurcate further litigation as to those Counterclaims pending the outcome of the trial on Seiko Epson's patent-infringement claim.

Ninestar responded in part by attaching its proposed Second Amended Answer to its Memorandum in Opposition to Seiko Epson's Motion to Dismiss. According to Ninestar, the Second Amended Answer remedies any pleading defects in its First Amended Answer.

On November 3, 2009, the Court issued a scheduling Order requiring the parties to submit a joint status report identifying the issues raised in the pending Motion that would remain if the Court allowed Ninestar to file its Second Amended Answer. In their Joint Status Report, the parties agree the remaining issues raised in the pending motion are (1) whether Ninestar has stated a "sham" litigation antitrust Counterclaim under § 2 of the Sherman Act, (2) whether the Court should strike "extraneous" allegations in Ninestar's "Walker Process" Antitrust Counterclaim, (3) whether the Court should bifurcate and stay the antitrust issues raised in Ninestar's Counterclaims, and (4) whether the Court should dismiss Ninestar's Counterclaim for intentional interference with prospective economic advantage if Ninestar's "sham" litigation Counterclaim is dismissed. In the Joint Status Report, Ninestar also concedes the Court should dismiss its Counterclaims as to antitrust conspiracy and negligent interference with prospective economic advantage.

### STANDARDS

1. *Failure to State a Claim.*

■ Dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is proper only if the pleadings fail to allege sufficient facts to establish a plau-

sible entitlement to relief. *Bell Atlantic v. Twombly,* 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* (Internal citations omitted). *See also Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff. *Intri–Plex Tech., Inc. v. Crest Group, Inc.,* 499 F.3d 1048, 1050 n. 2 (9th Cir.2007). "The court need not accept as true, however, allegations that contradict facts that may be judicially noticed by the court." *Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir.2000) (citations omitted). The court's reliance on judicially-noticed documents does not convert a motion to dismiss into a summary-judgment motion. *Intri–Plex,* 499 F.3d at 1052.

2. *Bifurcation of Trial.*

■ Federal Rule of Civil Procedure 42(b) provides: "[F]or convenience, to avoid prejudice, or to expedite and economize, the court, may order a separate trial of one or more separate issues, claims, cross-claims, counterclaims, or third-party claims" as long as the court "preserve[s]

any federal right to a jury trial." "The district court has broad discretion to bifurcate a trial to permit deferral of costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues." *Jinro Am., Inc. v. Secure Inv., Inc.*, 266 F.3d 993, 998 (9th Cir.2001).

## DISCUSSION

### 1. *Sham Litigation Counterclaim.*

In it Second Counterclaim, Ninestar alleges Seiko Epson has initiated "sham" patent litigation in this Court and at the International Trade Commission (ITC) for the unlawful purpose of monopolizing trade in ink-jet cartridges that are used in Epson printers in violation of § 2 of the Sherman Antitrust Act, which provides:

> Every person who shall monopolize, or *attempt to monopolize,* or combine or conspire with any other persons, to monopolize any part of the trade or commerce ... shall be deemed guilty of a felony....

(Emphasis added.)

 To constitute "sham litigation" in the form of an alleged antitrust claim, "the [plaintiff's] lawsuit must be *objectively baseless* in the sense that no reasonable litigant could realistically expect success on the merits." Even if it is objectively baseless, the plaintiff's *subjective intent* must be "to attempt to interfere with the business relationships of a competitor." *Prof. Real Estate Investors, Inc. v. Columbia Pictures Ind., Inc.*, 508 U.S. 49, 61, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) (emphasis added).

 The elements of an "attempt to monopolize" antitrust claim are: (1) a specific intent to control prices or to destroy competition, (2) predatory or anti-competitive conduct to accomplish the monopolization, (3) a dangerous probability of success, and (4) causal antitrust injury. *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir.1996).

In support of its Second Counterclaim, Ninestar alleges Seiko Epson has monopolized or attempted to monopolize the market for ink-jet cartridges used in Epson printers by knowingly asserting invalid infringement claims and initiating proceedings before the ITC for the purpose of obtaining a General Exclusion Order [2] and cease-and-desist orders, thereby substantially eliminating competition and increasing Seiko Epson's chances of monopolizing the market. Ninestar also alleges it has suffered substantial damages as a result of Seiko Epson's alleged "sham" litigation.

Seiko Epson, however, contends Ninestar's allegations of "sham" litigation fail to state a claim because Seiko Epson has already prevailed at the ITC as to one of the patents at issue in this case and as to eight other patents at issue in *Glory South II,* thereby establishing the objective reasonableness of its litigation strategy. The ITC's findings were affirmed by the Federal Circuit Court of Appeals. *See Ninestar Tech. Co., Ltd. v. Int'l Trade Comm.,* 309 Fed.Appx. 388 (Fed.Cir.2009) *(per curiam), cert. denied,* — U.S. ——, 129 S.Ct. 2759, 174 L.Ed.2d 248 (2009).[3]

Ninestar argues the ITC decision does not constitute *res judicata,* and, therefore, "[d]efendants have a right to have these [factual] determinations made in a court of law." Whether the ITC's decision has any

---

**2.** A "General Exclusion Order" issued by the ITC excludes importation into the United States of articles that infringe United States patents. 19 U.S.C. § 1337(a)(1)(B)(i) and (ii).

**3.** At Seiko Epson's request, pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of adjudicative facts reporting, *inter alia,* prior relevant proceedings before the ITC and the U.S. Patent and Trademark Office.

res judicata effect, however, is irrelevant. The issues before the Court as to Ninestar's "sham" litigation Counterclaim are whether Seiko Epson's litigation strategy was objectively reasonable and, even if it was not, whether Seiko Epson's subjective intent was to interfere with Ninestar's business relationships.

■■ Although the "objective reasonableness" and "subjective intent" of an actor would ordinarily require the resolution of fact issues, thereby precluding dismissal for failure to state a claim as a matter of law, the Court concludes in this case that Seiko Epson's success in asserting its rights to related patents before the ITC and on appeal to the Federal Circuit establishes as a matter of law that the litigation efforts it has undertaken to protect its patent rights have been objectively reasonable. As the Supreme Court stated in *Professional Real Estate,* "[u]nder the objective prong of the sham exception, the Court of Appeals correctly held sham litigation must constitute the pursuit of claims *so baseless that no reasonable litigant could realistically expect to secure favorable relief.*" 508 U.S. at 62, 113 S.Ct. 1920. (Emphasis added.) The Supreme Court noted "[a] winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham." *Id.* at 61 n. 5, 113 S.Ct. 1920. The Court, therefore, concludes on this record that Seiko Epson's success in protecting its related patent rights before the ITC precludes as a matter of law Ninestar's Antitrust Counterclaim that Seiko Epson has engaged in "sham" litigation in violation of § 2 of the Sherman Act.

Accordingly, the Court **GRANTS** Seiko Epson's Motion to Dismiss Ninestar's Counterclaim based on "sham" litigation, in violation of Section 2 of the Sherman Act.

## 2. *Walker Process Counterclaim.*

■ In its Second Amended Answer, Ninestar alleges a "Walker Process" Antitrust Fraud Counterclaim under § 2 of the Sherman Act based on Seiko Epson's allegedly fraudulent prosecution of its patents before the Patent Office, including Seiko Epson's alleged conduct in withholding material information and misrepresenting prior relevant art.

Seiko Epson, in turn, requests the Court to enter an Order requiring Ninestar to replead this Counterclaim specifically by limiting it to an alleged violation of § 2 of the Sherman Act without the improper "sham litigation allegations, improper requests for relief, and other extraneous matter." Seiko Epson also asserts Ninestar has failed to plead an essential element of a *Walker Process* Antitrust Fraud Counterclaim; i.e., "but for" Seiko Epson's alleged fraud and/or misrepresentations to the Patent Office, the Patent office would not have issued the patents.

In *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corporation,* the Supreme Court held "enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present. In such event the treble damage provisions of § 4 of the Clayton Act would be available to an injured party." 382 U.S. 172, 174, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965).

In its Second Amended Answer, Ninestar alleges affirmative defenses of patent invalidity based on inequitable conduct and an Antitrust Counterclaim as to *Walker Process* fraud based on the same inequitable conduct: Seiko Epson's alleged failure to disclose and misrepresentation of prior art as to Patents 5,158,377 ('377 Patent), 5,221,148 ('148 Patent), 6,502,917 ('917 Patent), and 6,955,422 ('422 Patent). Ninestar's allegations, standing alone, are suffi-

cient to support its Twelfth, Thirteenth, and Fourteenth Affirmative Defenses of patent invalidity based on inequitable conduct. In support of its *Walker Process* Antitrust Fraud Counterclaim, however, Ninestar also alleges if Seiko Epson had disclosed the prior art, the Patent Office Examiner would not have issued any of the four patents.[4]

■ "To demonstrate *Walker Process* fraud, a claimant must [allege and] prove the patent would not have issued *but for* the patent examiner's justifiable reliance on the patentee's misrepresentation or omission." *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1347 (Fed.Cir.2007) (emphasis added). The Court concludes Ninestar's Second Amended Answer sufficiently pleads the requisite "but for" language that is necessary to state an antitrust counterclaim based on *Walker Process* fraud.

For these reasons, the Court **DENIES** Seiko Epson's Motion to Dismiss Ninestar's Antitrust Counterclaim based on *Walker Process* fraud in violation of § 2 of the Sherman Act.

### 3. *Bifurcation and Stay of Antitrust Counterclaim.*

■ In the alternative to dismissal, Seiko Epson urges this Court to exercise its discretion to bifurcate from the case-in-chief and to stay trial of Ninestar's *Walker Process* Antitrust Fraud Counterclaim pursuant to Federal Rule of Civil Procedure 42(b), thereby resolving the patent issues first and reserving the antitrust issue for a second jury trial if necessary.

To support its request, Seiko Epson points out that if the jury rendered a verdict in the first trial that Seiko Epson's patents are valid, the case would end if (1) Ninestar's affirmative defense of inequita-

ble conduct is presented to the jury for an advisory finding, (2) the jury rejects the defense, and (3) the Court adopts the jury's finding. As a result, Ninestar's *Walker Process* Antitrust Fraud Counterclaim would fail as a matter of law because there would not be the predicate finding of inequitable conduct to support the Counterclaim. On the other hand, if the jury were to make an advisory finding that any of the patents were invalid based on Seiko Epson's alleged inequitable conduct before the Patent Office, the *Walker Process* Antitrust Fraud Counterclaim would have to be resolved in a subsequent trial (to a jury, if requested) to decide whether the patents would have issued regardless of Seiko Epson's inequitable conduct.

On balance the Court concludes a jury trial of this patent case will be challenging enough without the simultaneous inclusion of antitrust issues. Moreover, only Ninestar, of all of the multiple defendants in this case, has asserted a *Walker Process* Antitrust Fraud Counterclaim, which may further complicate what already is a complex case for the jury.

In the exercise of its discretion, therefore, the Court concludes the efficient trial of this case is best served by bifurcating and staying trial of Ninestar's Walker Process Antitrust Fraud Counterclaim. Accordingly, the Court **GRANTS** Seiko Epson's Motion to Bifurcate and Stay Litigation as to Defendant Ninestar's *Walker Process* Antitrust Fraud Counterclaim.

### 4. *Intentional Interference with Prospective Economic Advantage.*

Ninestar alleges Seiko Epson's litigation strategy in this Court and before the ITC supports Ninestar's state-law Counterclaim for Intentional Interference with

---

**4.** *See* Ninestar's Second Amended Answer, ¶¶ 29 r, t, x, and z and ¶¶ 30–33, 35–36, and 39–40 ('377 and '48 Patents); ¶¶ 35–36 ('917 Patent); and ¶¶ 39–40 ('422 Patent).

Prospective Economic Advantage. In *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, however, the Federal Circuit held the same "objectively baseless" standard applied by the Supreme Court in *Professional Real Estate* as to "sham" antitrust litigation also applies to state-law claims based on interference with prospective economic advantage. 362 F.3d 1367, 1377 (Fed.Cir.2004).

Here the Court concludes Seiko Epson's success in litigating and appealing related patents before the ITC or on appeal in the Federal Circuit precludes Ninestar's state-law claim as a matter of law based on the Court's finding that Seiko Epson's litigation strategy has not been objectively baseless.

Accordingly, the Court **GRANTS** Seiko Epson's Motion to Dismiss Defendant Ninestar's Counterclaim for Intentional Interference with Prospective Economic Advantage.

### CONCLUSION

For these reasons, the Court, *nunc pro tunc* as of November 3, 2009, **GRANTS** Defendant Ninestar leave to file the Second Amended Answer and **DISMISSES with prejudice** all Counterclaims asserted in Ninestar's First Amended Answer that Ninestar has not asserted in its Second Amended Answer. The Court also **GRANTS** Seiko Epson's Motion (# 197) to Dismiss Ninestar's Counterclaim based on

"sham" antitrust litigation in violation of § 2 of the Sherman Act, **DENIES** Seiko Epson's Motion to Dismiss Ninestar's Counterclaim based on *Walker Process* antitrust fraud in violation of § 2 of the Sherman Act, **GRANTS** Seiko Epson's Motion to Stay and Bifurcate Litigation of Ninestar's Counterclaim based on *Walker Process* antitrust fraud, and **GRANTS** Seiko Epson's Motion to Dismiss Ninestar's Counterclaim for Intentional Interference with Prospective Economic Advantage.

IT IS SO ORDERED.

### OPINION AND ORDER

This matter comes before the Court on the Motion (# 233) of Defendants and Counterclaimants NineStar Image Co., Ltd; Ninestar Technology Co., Ltd; Town Sky, Inc.; and DataProducts USA, LLC (hereinafter referred to collectively as Ninestar)[1] for Clarification and/or Modification of this Court's Opinion and Order issued on January 21, 2010.[2] In its Opinion and Order, the Court addressed the Motion of Plaintiffs and Counterdefendants Seiko Epson Corporation; Epson America, Inc.; and Epson Portland, Inc. (hereinafter referred to collectively as Seiko Epson) to Dismiss and Strike or, in the Alternative, Stay and Bifurcate the Litigation of the Ninestar Defendant's Antitrust Counterclaims and Affirmative Defenses.[3]

---

**1.** The Court notes Defendants Ninestar have retained new local counsel. The Court reminds all counsel that the Court expects the meaningful participation of local counsel in both the preparation and trial of the case and in their client's maintenance of appropriate decorum. *See* LR 83–3(1) and LR 83–7(b) and (c).

**2.** In the related case, *Seiko Epson Corp. v. Glory South Software Manufacturing, Inc.*, 06–CV–477–BR (*Glory South II* ), Seiko Epson alleges Ninestar has infringed other patents. The issues involved in both cases, however,

are procedurally and substantively identical. Ninestar has filed a similar Motion (# 212) for Clarification and/or Modification in that case.

**3.** The same allegations support Ninestar's Counterclaims and Affirmative Defenses based on antitrust violations. The parties' arguments and the Court's Opinion on the original Motion focused on the Counterclaims. The Court's rulings on both the original Motion and this Motion, however, apply equally to Ninestar's Affirmative Defenses and related Counterclaims.

For the following reasons, the Court **DENIES** Ninestar's Motion for Clarification and/or Modification.

## BACKGROUND

On July 27, 2009, Seiko Epson filed a Motion to Dismiss and Strike, or, in the Alternative, Stay and Bifurcate Litigation of the Ninestar Defendants' Antitrust Counterclaims and Affirmative Defenses. On August 24, 2009, Ninestar filed a Response with a proposed Second Amended Answer. On September 15, 2009, Seiko Epson filed a Reply.

On November 3, 2009, the Court issued an Order directing the parties to submit a Joint Status Report for the purpose of "clarify[ing]" and "narrow[ing] the Claims and Counterclaims in dispute" and "iden-tif[ying] the issues raised in the pending Motions that need to be decided." On November 12, 2009, the parties filed a Joint Status Report in which they set forth their views of the issues to be resolved by the Court in light of the allegations in Ninestar's Second Amended Answer.

On January 19, 2010, the Court issued its Opinion and Order in which it granted Ninestar's Motion to file a Second Amended Answer, dismissed Ninestar's antitrust Counterclaim based on "sham" litigation, denied Seiko Epson's Motion to Dismiss Ninestar's antitrust *Walker Process* fraud Counterclaim, and dismissed Ninestar's Counterclaim for intentional interference with prospective advantage.

## DISCUSSION

1. *Nature of Ninestar's Motion.*

Ninestar seeks clarification and/or modification of the Court's January 19, 2010, Opinion and Order addressing Ninestar's Motion to Dismiss and Strike or, in the Alternative, Stay and Bifurcate the Litigation of the Ninestar Defendant's Antitrust Counterclaims and Affirmative Defenses.

In its Memorandum in support of its Motion, Ninestar argues this Court's analysis in its Opinion and Order as to Ninestar's Motion to Dismiss relies "largely" on Seiko Epson's "representation of the counterclaims as opposed to what the counterclaims actually say." According to Ninestar, Seiko Epson's representation and the Court's alleged reliance thereon are erroneous. Ninestar argues "it is clear from the Court's order as well as from the misleading arguments presented by [Seiko] Epson that there is confusion and a need for clarification." The overarching theme of Ninestar's initial Memorandum and Reply Memorandum in support of its pending Motion is that the Court did not understand Ninestar's pleadings and inappropriately deferred to Seiko Epson's analysis. Ninestar attempts to explicate its pleadings for the purpose of persuading the Court to revisit and to "modify" (*i.e.,* to reconsider) those rulings that were adverse to Ninestar, particularly as they pertain to Ninestar's antitrust Counterclaims based on Seiko Epson's alleged "sham litigation" tactics before the International Trade Commission (ITC) and its related Counterclaim for damages arising from Seiko Epson's alleged intentional interference with Ninestar's prospective advantage.

Seiko Epson, in return, asserts Ninestar's Motion is essentially a "Motion for Reconsideration." The Court agrees.

Federal Rule of Civil Procedure 54(b) governs motions for reconsideration. It provides in relevant part:

[A]ny order or other decision, however, designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all of the parties does not end the action as to any of the claims or parties and *may be revised at any time before the entry of a judgment* adjudi-

cating all the claims and all the parties' rights and liabilities. Emphasis added. *See also City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir.2001)("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, *rescind*, or *modify* an interlocutory order for cause seen by it to be sufficient." (italicized emphasis in original; underlined emphasis added)).

On this record, the Court concludes Ninestar is requesting the Court to reconsider and to modify two of its prior rulings as to Seiko Epson's Motion (# 197) to Dismiss relating to Seiko Epson's alleged "sham" litigation tactics and its alleged interference with Ninestar's prospective advantage. Accordingly, the Court concludes Ninestar's pending Motion is a Motion for Reconsideration of the Court's January 19, 2010, Opinion and Order pursuant to Federal Rule of Civil Procedure 54(b).

**2. *Standards for Rule 54(b) Reconsideration.***

 "The doctrine of the law of the case ... counsels against reopening questions once resolved in ongoing litigation." *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n. 5 (9th Cir.1989)(*citing* 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4478 (1981) at 788–89). "[T]he major grounds that justify reconsideration involve an intervening change in the law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Pyramid Lake*, 882 F.2d at 369 n. 5.

 The decision whether to reconsider an interlocutory order is within the discretion of the trial court. *Baykeeper*, 254 F.3d at 887. *See also Barber v. Haw.*, 42 F.3d 1185, 1198 (9th Cir.1994).

**3. *Analysis.***

The fundamental issue raised by Ninestar is whether the Court misconstrued the nature of Ninestar's antitrust Affirmative Defenses and Counterclaims and, therefore, whether the Court should reconsider or modify that part of its Opinion and Order in which its dismisses those Affirmative Defenses and Counterclaims in order to prevent manifest injustice.

After Ninestar improperly attached its "proposed" Second Amended Answer to its Memorandum in opposition to Seiko Epson's Motion to Dismiss, the Court, as noted, ordered the parties "to clarify and possibly narrow the Claims and Counterclaims in dispute" by filing a Joint Status Report that "identifies the issues raised in the pending Motions that remain to be decided ... if the Court allows the Second Amended Answer to be filed."

In the Joint Status Report, Ninestar stated:

> It appears to [Ninestar] that the only issues for the Court to decide are whether or not the proposed Second Amended Counterclaim properly spells out causes of action related *to the sham litigation allegations involved in the ITC proceedings, based on the assertion of fraudulently obtained patents* as well as on inappropriate infringement allegations and *tortious interference allegations related to the presently pending action based on the assertion of fraudulently obtained or maintained patents.*

Emphasis added.

Seiko Epson identified, *inter alia*, the following issues:

> Whether Ninestar's attempt to plead a Sherman Act Section 2 antitrust claim premised on *"sham litigation"* allegations fails as a matter of law; Whether Ninestar's claim for *intentional interfer-*

*ence with prospective business advantage* is preempted.

Emphasis added.

### a. Sham Litigation before the ITC.

■ This Court held "Seiko Epson's success in protecting its related patent rights [against Ninestar] before the ITC precludes as a matter of law Ninestar's Antitrust Counterclaim that Seiko Epson engaged in sham litigation before the ITC." Opin. and Order at 12. In an apparent contradiction of its position set forth in the Joint Status Report, Ninestar now asserts:

> In fact, there is no counterclaim for sham litigation in the ITC proceedings [alleged in Ninestar's Second Amended Complaint]. There are *specific allegations in the general factual allegations relating to the factual issues which were litigated in the ITC proceedings,* such as, *e.g.,* whether there was infringement of the patents in suit.

Defs.' Mem. at 3 (emphasis added). In its Second Amended Answer, Ninestar alleges 47 paragraphs of "general allegations" in support of its Affirmative Defenses and Counterclaims for a "Federal Antitrust Violation." Ninestar, however, does not identify any of the "specific" allegations in its pleadings that are incorporated in the "general" allegations that it now refers to in the Joint Status Report as an antitrust *Walker Process* fraud Counterclaim based on "sham litigation," which is a sobriquet Ninestar now appears to renounce.

The Court notes the "general allegations" in paragraphs 10 and 11 of Ninestar's Affirmative Defenses and Counterclaims may state a Counterclaim against Seiko Epson for fraud on United States Customs and Border Protection (Customs) and those Affirmative Defense and Counterclaim allegations set forth in paragraphs 16, 17, 29, 34, and 44 may state a Counterclaim against Seiko Epson for fraud on the United States Patent and Trademark Office (USPTO). Ninestar, however, asserts the Court either failed to address or misunderstood that there also are specific allegations in Ninestar's Second Amended Answer that, if proved, would allow Ninestar to recover damages under its antitrust *Walker Process* fraud Counterclaim based on Seiko Epson's alleged fraud in the proceedings before Customs and the USPTO. According to Ninestar, the ITC determined only that Ninestar's products infringed Seiko Epson's patents but did not, however, determine whether Seiko Epson obtained its patents by engaging in fraud before USPTO. Ninestar contends the Court's "confusion" resulted in the dismissal of "a nonexistent cause of action for sham litigation." Ninestar's underlying concern, appears to be that it believes the Court should allow Ninestar to present damages evidence at trial relating to the surviving *Walker Process* fraud Counterclaim regardless of the ITC's ruling adverse to Ninestar as to patent infringement.

Seiko Epson, however, points out that contrary to Ninestar's current position, Ninestar agreed in the Joint Status Report that its sham-litigation Counterclaim was still to be decided. The Court, thereafter, dismissed the Counterclaim in light of Seiko Epson's success before the ITC. *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 61 n. 5, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) ("A winning lawsuit" is not objectively baseless because "by definition" it is "a reasonable effort at petitioning for redress."). In any event, Seiko Epson does not contend the Court's ruling necessarily precludes Ninestar from seeking damages based on its alleged antitrust *Walker Process* fraud Counterclaim, which survived Seiko Epson's Motion to Dismiss. Seiko Epson's analysis accurately portrays the Court's ruling.

On this record, the Court finds there is not any reason to clarify, to modify, or to reconsider its ruling pertaining to Ninestar's Counterclaim based on Seiko Epson's alleged sham litigation before the ITC. The Court shall address evidentiary issues relating to the trial of this case if and when they are presented in pretrial Motions.

### b. Intentional interference with prospective advantage.

In its Opinion and Order, the Court concluded Ninestar's Counterclaim for intentional interference with prospective advantage is "objectively baseless" in light of the ITC's finding in favor of Seiko Epson and against Ninestar. In the pending Motion, Ninestar seeks "clarification" of the Court's ruling and characterizes the ruling as "like something out of Alice in Wonderland" because "such claims are filed every day in patent cases."

Ninestar's Counterclaim for intentional interference with prospective advantage rests on its incorporation of the following "general allegations" that are also alleged in support of Ninestar's Counterclaims for patent invalidity and antitrust violations:

[Seiko Epson's] allegations of infringement of these claims were used in proceedings before the International Trade Commission in securing a General Exclusion Order ("GEO") and cease and desist orders, which have had a major financial impact on Defendants and have further established [Seiko Epson's] monopoly in the market for ink jet cartridges for use in Epson printers.

\* \* \*

[Seiko Epson has] attempted to monopolize the market for ink cartridges for use in the market created by Epson printers and in obtaining a multimillion dollar penalty against [Ninestar] in the [ITC].

\* \* \*

The foregoing conduct of [Seiko Epson] constitutes monopolization in violation of the antitrust laws of the United states for which Defendants are entitled to recover treble damages they have sustained as a result of said conduct....

Second Am. Answer at ¶¶ 9, 24, 25. In addition, Ninestar alleges Seiko Epson filed this action for the purpose of unlawfully interfering with Ninestar's prospective advantage:

[Seiko Epson], as competitors of [Ninestar], have at all times been aware of the relationship between Ninestar and their customers and *have initiated this litigation for the specific and intentional purpose of interfering with those relationships so* [Seiko Epson] could take Ninestar's customers for themselves.

Second Am. Answer at ¶ 69 (emphasis added). Thus, the gravamen of Ninestar's allegations is that Seiko Epson sued Ninestar in the ITC and then brought this action for the sole purpose of interfering with Ninestar's relationship with its customers. In support of this proposition, Ninestar, both in its original opposition to Seiko Epson's Motion to Dismiss and in its pending Motion, relies on the Federal Circuit's holding in *Zenith Electronics Corp. v. Exzec, Inc.,* that "state tortious interference with contractual relations claims [are] not preempted by the patent laws" if the patentee acted in "bad faith." 182 F.3d 1340, 1355 (Fed.Cir.1999).

The Court found Ninestar's Counterclaim for tortious interference against Seiko Epson based on Seiko Epson's initiation of a proceeding against Ninestar in the ITC to protect its patent rights was not viable because Seiko Epson prevailed in the ITC proceeding. *See Globetrotter Software, Inc. v. Elan,* 362 F.3d 1367, 1377 (Fed.Cir.2004). The fact that the ITC addressed only whether Ninestar infringed Seiko Epson's patents and not whether

Seiko Epson fraudulently obtained the patents in the first instance is not relevant. The fact is that Seiko Epson prevailed, and, therefore, Seiko Epson's claim was not objectively baseless as a matter of law.

On this record, the Court concludes Ninestar has not shown any reason why this Court should modify or reconsider its previous rulings set forth in its Opinion and Order issued January 19, 2010.

## CONCLUSION

For these reasons, the Court, in the exercise of its discretion, **DENIES** the Motion (# 233) of Defendants and Counterclaimants Ninestar Image Co., Ltd; Ninestar Technology Co., Ltd; Town Sky, Inc.; and DataProducts USA, LLC, for Clarification and/or Modification of this Court's Opinion and Order entered on January 19, 2010.

IT IS SO ORDERED.