**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee,*

v.

ARTHUR W. BELL, IV; PERALDO
BROTHERS; CHRISTINE L. MATLEY
FAMILY TRUST; RAY CONLAN;
FRANCIS E. DUBOIS, III; FALLON
PAIUTE SHOSHONE INDIAN TRIBE;
CITY OF FALLON; FREY RANCH
PARTNERSHIP; DEBRA S. FREY;
CHARLES P. FREY, JR.; CALVIN R.
MOFFITT; STATE OF NV DIV OF L,
Division of Lands; STATE OF
NEVADA PAROLE DEPT., Division of
Wildlife; STILLWATER FARMS, INC.;
THE LARRY FRITZ FAMILY TRUST;
TOWN OF FERNLEY,
                *Defendants,*

and

BOARD OF DIRECTORS OF TCID
(TRUCKEE IRRIGATION DISTRICT),
           *Defendant-Appellant.*

No. 05-16154

D.C. No.
CV-95-00757-HDM

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellant,*

                    v.

ARTHUR W. BELL, IV; PERALDO
BROTHERS; CHRISTINE L. MATLEY
FAMILY TRUST; RAY CONLAN;
FRANCIS E. DUBOIS, III; FALLON
PAIUTE SHOSHONE INDIAN TRIBE;
CITY OF FALLON; FREY RANCH
PARTNERSHIP; DEBRA S. FREY;
CHARLES P. FREY, JR.; CALVIN R.
MOFFITT; STATE OF NV DIV OF L,
Division of Lands; STATE OF
NEVADA PAROLE DEPT., Division of
Wildlife; STILLWATER FARMS, INC.;
THE LARRY FRITZ FAMILY TRUST;
TOWN OF FERNLEY,
                    *Defendants,*

                    and

BOARD OF DIRECTORS OF TCID
(TRUCKEE IRRIGATION DISTRICT)
Truckee-Carson Irrigation District,
                    *Defendant-Appellee.*

No. 05-16157
D.C. No.
CV-95-00757-HDM

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

ARTHUR W. BELL, IV; PERALDO
BROTHERS; CHRISTINE L. MATLEY
FAMILY TRUST; RAY CONLAN;
FRANCIS E. DUBOIS, III; FALLON
PAIUTE SHOSHONE INDIAN TRIBE;
CITY OF FALLON; FREY RANCH
PARTNERSHIP; DEBRA S. FREY;
CHARLES P. FREY, JR.; CALVIN R.
MOFFITT; STILLWATER FARMS, INC.;
THE LARRY FRITZ FAMILY TRUST;
TOWN OF FERNLEY; BOARD OF
DIRECTORS OF TCID (TRUCKEE
IRRIGATION DISTRICT), Truckee-
Carson Irrigation District,
            *Defendants,*

            and

STATE OF NEVADA, DIVISION OF
LANDS; STATE OF NEVADA DIVISION
OF WILD LIFE,
            *Defendants-Appellants.*

No. 05-16158

D.C. No.
CV-95-00757-HDM

UNITED STATES OF AMERICA,
                              *Plaintiff,*

                    v.

ARTHUR W. BELL IV; PERALDO
BROTHERS; CHRISTINE L. MATLEY
FAMILY TRUST; RAY CONLAN;
FRANCIS E. DUBOIS, III; FALLON
PAIUTE SHOSHONE INDIAN TRIBE;
CITY OF FALLON; FREY RANCH
PARTNERSHIP; DEBRA S. FREY;
CHARLES P. FREY, JR.; CALVIN R.
MOFFITT; STATE OF NV DIV OF L,
Division of Lands; STATE OF
NEVADA PAROLE DEPT., Division of
WILDLIFE; STILLWATER FARMS, INC.;
THE LARRY FRITZ FAMILY TRUST;
TOWN OF FERNLEY,
                              *Defendants,*

                    and

BOARD OF DIRECTORS OF TCID
(TRUCKEE IRRIGATION DISTRICT)
Truckee-Carson Irrigation District,
                    *Defendant-Appellee.*

No. 05-16187

D.C. No.
CV-95-00757-HDM

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

     v.

ARTHUR W. BELL, IV,
           *Defendant,*

FRANCIS E. DUBOIS, III; FALLON PAIUTESHOSHONE INDIAN TRIBE,
           *Defendants,*

FREY RANCH PARTNERSHIP; DEBRA S. FREY; CHARLES P. FREY, JR.,
           *Defendants,*

STATE OF NV DIV OF L, Division of Lands; STATE OF NEVADA PAROLE DEPT., Division of Wildlife; STILLWATER FARMS, INC.,
           *Defendants,*

TOWN OF FERNLEY; BOARD OF
DIRECTORS OF TCID (TRUCKEE
IRRIGATION DISTRICT), Truckee-
Carson Irrigation District,
*Defendants,*

and

PERALDO BROTHERS; CHRISTINE L.
MATLEY FAMILY TRUST; RAY
CONLAN,
*Defendants-Appellants,*

CITY OF FALLON,
*Defendant-Appellant,*

CALVIN R. MOFFITT,
*Defendant-Appellant,*

THE LARRY FRITZ FAMILY TRUST,
*Defendant-Appellant.*

No. 05-16189
D.C. No.
CV-95-00757-HDM

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

            v.

ARTHUR W. BELL, IV; PERALDO
BROTHERS; CHRISTINE L. MATLEY
FAMILY TRUST; RAY CONLAN;
FRANCIS E. DUBOIS, III; FALLON
PAIUTE SHOSHONE INDIAN TRIBE;
CITY OF FALLON; FREY RANCH
PARTNERSHIP; DEBRA S. FREY;
CHARLES P. FREY, JR.; CALVIN R.
MOFFITT; STATE OF NV DIV OF L,
Division of Lands; STATE OF
NEVADA PAROLE DEPT., Division of
Wildlife; STILLWATER FARMS, INC.;
THE LARRY FRITZ FAMILY TRUST;
TOWN OF FERNLEY,
                    *Defendants,*

            and

BOARD OF DIRECTORS OF TCID
(TRUCKEE IRRIGATION DISTRICT
Truckee-Carson Irrigation District,
                    *Defendant-Appellant.*

No. 05-16909
D.C. No.
CV-95-00757-HDM
OPINION

Appeal from the United States District Court
for the District of Nevada
Howard D. McKibben, District Judge, Presiding

Argued and Submitted
October 8, 2009—San Francisco, California

Filed April 20, 2010

Before: Mary M. Schroeder and Marsha S. Berzon, Circuit Judges, and Milton I. Shadur,* District Judge.

Opinion by Judge Schroeder

---

*The Honorable Milton I. Shadur, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

## COUNSEL

Katherine J. Barton, Washington, D.C., for plaintiff-appellee/appellant United States of America.

Don Springmeyer, Las Vegas, Nevada, for intervenor-appellee/appellant Pyramid Lake Paiute Tribe of Indians.

Michael J. Van Zandt, San Francisco, California, for defendant-appellant/appellee Board of Directors of Truckee Irrigation District.

Michael L. Wolz, Reno, Nevada, for defendants-appellants State of Nevada.

Michael F. Mackdon, Fallon, Nevada, for defendants-appellants State of Nevada.

## OPINION

SCHROEDER, Circuit Judge:

### BACKGROUND

The long, divisive history of this and related litigation over the waters of the Truckee and Carson Rivers, and the decline

of Pyramid Lake, is best reflected in *Nevada v. United States*, 463 U.S. 110 (1983), and in several landmark opinions of this and other courts. *See, e.g., Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364 (9th Cir. 1989) ("*Tribe v. Hodel*"); *Truckee-Carson Irrigation Dist. v. Sec'y of Dep't of Interior*, 742 F.2d 527 (9th Cir. 1984) ("*TCID v. Secretary*"); *United States v. Alpine Land & Reservoir Co.*, 697 F.2d 851 (9th Cir. 1983); *Pyramid Lake Paiute Tribe of Indians v. Morton*, 354 F. Supp. 252 (D.D.C. 1973) ("*Tribe v. Morton*"). Congress had passed the Reclamation Act in 1902, creating projects to reclaim otherwise arid western lands for farming. *See* Reclamation Act of 1902, Pub. L. No. 57-161, 32 Stat. 388. One of the projects created by the Reclamation Act, the Newlands Project ("Project"), controls diversions from the Truckee and Carson Rivers. The Truckee-Carson Irrigation District ("TCID") has managed the Project under a contract with the federal government for decades. This particular case concerns the United States' effort to recoup excess diversions TCID permitted over many years.

The Nevada district court originally established the amount of water that could be diverted for agricultural uses from the Truckee River in a 1944 order known as the *Orr Ditch* decree, Equity No. A-3 (D. Nev. 1944). The court did not issue a final order on rights to the Carson until 1980, in *United States v. Alpine Land & Reservoir Co.*, 503 F. Supp. 877 (D. Nev. 1980) ("*Alpine* decree").

In the mid-20th Century, concerns grew over the adverse effect of the diversions on Pyramid Lake's unique fish populations. *See Nevada*, 463 U.S. at 119 n.7 (noting surface area of Pyramid Lake decreased by 20,000 acres between 1920 and 1940). Water from the Truckee naturally flows to Pyramid Lake which is under the control of the Pyramid Lake Paiute Tribe ("the Tribe"). The Secretary of the Interior ("Secretary") responded to the concerns about Pyramid Lake fish in 1967 by imposing operating criteria and procedures

("OCAPs") limiting the maximum diversions from the Truckee and Carson.

Unhappy with the OCAPs as too generous to the farmers, the Tribe successfully challenged them in the District of Columbia. The D.C. district court in *Tribe v. Morton*, 354 F. Supp. at 256, ordered the Secretary to implement a more restrictive OCAP. Known as the "1973 OCAP," it was challenged by TCID in this court. We upheld it in *TCID v. Secretary*, 742 F.2d at 532, yet TCID has refused to follow it.

In 1990, Congress stepped in to attempt a resolution of the ongoing dispute between the Tribe and TCID by enacting the Fallon Paiute Shoshone Indian Tribes Water Rights Settlement Act of 1990, Pub. L. No. 101-618, 104 Stat. 3289 ("Settlement Act"). The Settlement Act, as relevant to this case, provides:

> The Secretary shall henceforth ensure compliance with all of the provisions of the operating criteria and procedures referenced in paragraph (2) of this subsection or any applicable provision of any other operating criteria or procedures for the Newlands Project previously adopted by the Secretary, and shall, pursuant to subsection 709(h) or judicial proceeding, pursue recoupment of any water diverted from the Truckee River in excess of the amounts permitted by any such operating criteria and procedures.

Settlement Act § 209(j)(3). The Settlement Act also states that it should not be read in such a manner as to conflict with the *Orr Ditch* and *Alpine* decrees. *See* Settlement Act § 210(b)(13).

Five years after the enactment of the Settlement Act the United States instituted this case by filing a complaint against TCID, its board members, and all water users in the Project

as a class, seeking to recoup over one million acre-feet ("af") of water diverted in excess of applicable OCAPs from 1973-1988. The Tribe intervened as a plaintiff.

After lengthy evidentiary proceedings, the district court in 2003 issued its decision holding that TCID had willfully failed to comply with the 1973 OCAP. Nevertheless, although the government had sought over a million af of water as recoupment, the district court awarded just under 200,000 af. The court credited the report of TCID's expert and concluded that the government was only entitled to recoupment for excess diversions in 1974, 1975, 1978 and 1979; the court also awarded recoupment for spills of water in 1979 and 1980. The court held that the government, and not TCID, was responsible for excess diversions after 1980, because the government had failed to revise the OCAPs to reflect the water duties in the 1980 *Alpine* decree.

With respect to interest on the water TCID owed the government by virtue of its decision, the court initially denied both prejudgment and postjudgment interest. The reasons it gave were the government's delay in bringing this action and the government's having inadvertently destroyed certain records relevant to the litigation. The district court later modified this decision and awarded postjudgment water interest. It ruled TCID must repay two-percent each year on the balance of water remaining to be recouped for replenishing the waters of Pyramid Lake.

TCID now appeals the district court's ruling that the government under the Settlement Act can pursue any claim for past excess diversions. It also appeals the award of postjudgment interest on water yet to be recouped and, on behalf of water rights holders ("farmers"), it appeals the denial of attorneys' fees under the Equal Access to Justice Act ("EAJA"). Nevada, a party to the case because it owns some of the irrigated land, appeals the denial of its claim for costs.

The government and the Tribe cross-appeal the denial of prejudgment interest. They also appeal the district court's rejection of the government's position that more recoupment should have been ordered as a result of gauge error in measuring the excess diversions and the denial of recoupment for diversions and spills occurring between 1980 and 1984.

Because the district court's judgment followed a bench trial, this court reviews the district court's findings of fact for clear error and its conclusions of law de novo. *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 583 F.3d 1232, 1236 (9th Cir. 2009). We vacate the district court's rulings with respect to interest and remand for the court to explain the legal basis for its unprecedented award of interest that must be repaid in water. We also reverse the denial of the government's claim that gauge error was not properly accounted for. We otherwise affirm the district court's judgment.

## DISCUSSION

### I. This Action Was Properly Maintained Pursuant to the Settlement Act.

TCID's fundamental position is that Congress, in passing the Settlement Act, did not intend to create a judicially enforceable cause of action to allow the government to recoup excess diversions for past violations of OCAPs. TCID's position is not supported by the language, history, or purpose of the Act.

Congress passed the Settlement Act to encourage settlement of litigation and pending claims, to fulfill its trust obligations to the Tribe, and to promote the recovery of Pyramid Lake. *See* Settlement Act § 202(d)-(f). Congress optimistically envisioned the possibility of TCID and the government achieving these goals through a settlement. This is evidenced in Settlement Act § 209(h)(1) which provides that certain pro-

visions of the Act would not go into effect "unless and until the Truckee-Carson Irrigation District has entered into a settlement agreement with the Secretary concerning claims for recoupment of water diverted in excess of the amounts permitted by applicable operating criteria and procedures." To facilitate settlement, the Act includes a provision allowing the Secretary to cancel certain TCID repayment obligations. *See* Settlement Act § 209(g). Given the years of contentious litigation surrounding Pyramid Lake, however, Congress recognized that such a settlement might not occur.

[1] Accordingly, Congress included Section 209(j)(3) in the Settlement Act. It directs the Secretary to "ensure compliance with all of the provisions of the [OCAPs]", and expressly refers to compliance with "previously adopted" OCAPs. *See* Settlement Act § 209(j)(3). That section in turn directs the Secretary to "pursue recoupment of any water diverted from the Truckee River in excess of the amounts permitted by any [OCAP]" and to do so "pursuant to . . . [a] judicial proceeding."

[2] TCID contends the statute merely permits the Secretary to prevent future violations of the OCAPs. But the statutory language is mandatory, and the purpose of the Act was to remedy past violations. Section 202 declares the purpose of the Act to promote the "recovery of the Pyramid Lake fishery." The stated purpose demonstrates that Congressional intent was to restore the Lake, not to maintain the status quo.

[3] Moreover TCID is mistaken in suggesting the court was somehow imposing a new and not clearly authorized duty with respect to past misconduct. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994) (noting legislation may be applied retroactively only where Congressional intent is clear). The court acted pursuant to express Congressional authority to redress past violations of the limits that were in effect when the excess diversions took place. Thus, the district court did not err in finding the Settlement Act unambigu-

ously authorizes the government to seek recoupment for TCID's prior violations of OCAPs via this action.

## II.   The District Court's Decision Does Not Conflict With the Water Decrees.

[4] TCID, joined by Nevada, also argues that even if a cause of action exists, the district court's decision allowing recoupment conflicts with the *Orr Ditch* and *Alpine* decrees, essentially because there is not enough water both to satisfy the requirements of the decrees and to restore Pyramid Lake. TCID is correct that the Settlement Act itself recognizes that it is not intended to affect the rights of farmers under the decrees. *See* Settlement Act § 210(b)(13). The district court recognized that replenishing the water of Pyramid Lake while still providing farmers with the water they are due will prove a difficult task because of the substantial water duties the decrees established for agriculture.

The *Orr Ditch* and *Alpine* decrees set the water duty for Newlands farmers at 3.5 acre feet per acre ("afa") for bottom lands, and 4.5 afa for bench lands. This allowance, however, is limited by the principle of beneficial use. 43 U.S.C. § 372; *see also Ickes v. Fox*, 300 U.S. 82, 90 (1937). We have described beneficial use as "a dynamic concept, which is variable according to conditions, and therefore over time." *Alpine Land & Reservoir Co.*, 697 F.2d at 855 (internal quotation marks and citation omitted). It is not a hard and fast unit of measurement. The district court's decision here made it clear that it was reserving for the future the annual calculation of the actual amounts to which each farmer would be entitled applying the concept of beneficial use. Therefore we do not yet know how much water the government will recoup in any given year. We also do not know how much water will be available to meet the competing demands. Conservation may increase the supply. At oral argument counsel for the Tribe explained, for example, that TCID can implement water conservation measures that create "credit water." If so, TCID can

send this "credit water" to Pyramid Lake, rather than to farmers, in satisfaction of the judgment. Indeed, we were told this process has already begun.

[5] Even if it proves difficult, TCID has not convinced us that the district court's recoupment order will be impossible to implement. It is for the district court in administering the order to ensure the recoupment process remains consistent with the *Orr Ditch* and *Alpine* decrees. Given TCID's past record of noncompliance, it is for TCID to make a good faith effort to maximize the supply of water to meet the competing demands.

## III.   The 1973 OCAP Is Valid and Enforceable.

TCID makes a related argument that the 1973 OCAP, which the district court found to have been violated between 1973 and 1980, was not valid. The 1973 OCAP was directed by the court in *Tribe v. Morton* and embodied in a regulation promulgated by the Secretary. It remained in effect through 1984. This OCAP's maximum diversions were premised on the Carson's then-existing water duty of 2.92 afa. The 1980 *Alpine* decree raised this water duty to 3.5 afa/4.5 afa for bottom and bench lands respectively. TCID thus argues that the increased water duties created in the *Alpine* decree invalidated the 1973 OCAP, making it unenforceable as a basis for recoupment.

[6] The Settlement Act again forecloses this argument by declaring that "[a]ll actions taken heretofore by the Secretary under any operating criteria and procedures are hereby declared to be valid." Settlement Act § 209(j)(2). The Act thus validates the 1973 OCAP, as it became a regulation promulgated by the Secretary acting at the direction of the court in *Tribe v. Morton*. The Settlement Act even expressly requires the Secretary to "act in a manner that is fully consistent with the decision in the case of [*Tribe v. Morton*]." *See*

Settlement Act § 209(j)(1). The district court did not err in ordering the 1973 OCAP to be enforced.

## IV. TCID's Remaining Challenges to the Recoupment Order.

**[7]** TCID's several additional attempts to sidestep accountability under the Settlement Act have no merit. TCID contends the district court was without power in equity to order the transfer of water from TCID to the government or Tribe because neither has any relevant water rights. TCID does not dispute that it controls all diversions of water from the Truckee and Carson Rivers, and the Settlement Act is clear in its mandate for recoupment of excess diversions to protect the Tribe's enjoyment of Pyramid Lake. Thus, the requirements of the Settlement Act may only be accomplished by the court's order requiring TCID to manage the recoupment process.

TCID also contends the district court's recoupment order in effect constitutes a civil contempt order or penalty because it orders TCID to account for violations of the 1973 OCAP and that it cannot constitute a valid contempt order because the 1973 OCAP is no longer in effect. The district court, however, entered a judgment in an action maintained pursuant to the Settlement Act. The court did not impose a penalty or hold TCID in contempt for violating a judicial order. *See FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (noting that a party is in contempt only when it first violates a judicial order).

Estoppel does not preclude the government from bringing this suit, despite TCID's claim that it relied on the government's statements decades ago that it would not enforce the 1973 OCAP. Even if the government took a different position in the past, the "[g]overnment may not be estopped on the same terms as any other litigant." *Heckler v. Cmty. Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 60 (1984). For

the government to be estopped, TCID must establish that the government engaged in "affirmative misconduct," and that the government's conduct has caused "a serious injustice." *Watkins v. U.S. Army*, 875 F.2d 699, 707 (9th Cir. 1989) (en banc).

TCID contends that the government committed affirmative misconduct by not enforcing the OCAPs in the past. But affirmative misconduct requires an "affirmative misrepresentation or affirmative concealment of a material fact by the government" that "go[es] beyond mere negligence." *Id.* The simple non-enforcement of a regulatory requirement certainly does not rise to this level. *See Western Pioneer, Inc. v. United States*, 709 F.2d 1331, 1339 (9th Cir. 1983).

TCID points to the government's argument in a 1973 lawsuit by environmental plaintiffs that implementation of the 1973 OCAP by TCID was not imminent. This was not an instance of affirmative misconduct. TCID has not shown that the government's argument was a representation that it would never enforce the OCAP against TCID, let alone an intentional or reckless misrepresentation to that effect.

**[8]** We thus hold the district court did not err in finding TCID liable under the Settlement Act for its violations of OCAPs. We now turn to the next issue, the extent of TCID's liability.

## V. The District Court Should Reexamine the Awards of Pre- and Postjudgment Interest.

**[9]** The novel issue in this appeal concerns the court's acceptance of the concept of interest payable in water. The judgment orders the return of water, not money, so the district court ordered interest to be paid in water. The district court's original decision denied both pre- and post- judgment interest to the government because it found that the government delayed in bringing this suit and accidentally destroyed a

number of documents relevant to this litigation. The district court modified this decision without explanation when it entered judgment, and required that TCID pay postjudgment water interest in the amount of two percent each year on the outstanding balance of water due.

The court did not explain the basis for the award of water interest. TCID contends there is no basis. For the following reasons, we remand to the district court so that it may explain the basis in the record for its legal or equitable award of "water interest" — that is, water over the amount wrongfully diverted each year.

**[10]** The purpose of postjudgment interest "is to compensate the successful plaintiff for being deprived of compensation for the loss of time between the ascertainment of the damage and the payment by the defendant." *Dishman v. UNUM Life Ins. Co. of America*, 269 F.3d 974, 989 (9th Cir. 2001) (internal quotation marks and citation omitted). Under the common law there is no postjudgment interest, so the propriety of an award of postjudgment interest "rests solely upon the statutory provision." *Pierce v. United States*, 255 U.S. 398, 406 (1921). The statutory provision governing postjudgment interest in federal court allows such interest only "on any money judgment in a civil case." 28 U.S.C. § 1961(a).

TCID thus argues that because Section 1961(a) refers only to "money judgment[s]," the district court did not have the authority to award postjudgment interest in the form of water. TCID also notes that the district court's award of non-monetary postjudgment interest appears unprecedented.

The government and Tribe rely on the Supreme Court's decision in *Texas v. New Mexico*, 482 U.S. 124 (1987) as the authority for postjudgment water interest. In *Texas*, the Court considered a dispute regarding apportionment of the waters of the Pecos River under a compact between the states. *Id.* at 126-29. The Special Master's report recommended that New

Mexico provide Texas with the water it had failed to pay under the compact, along with postjudgment interest should New Mexico fail to satisfy the judgment. *Id.* at 127-28. The Court remanded the case to the Special Master for consideration of whether a monetary award would be more appropriate, but discussed water interest in a footnote. *See id.* at 132-33 & n.8. The Court acknowledged its statement in *Pierce* that, "postjudgment interest may not be awarded absent statutory authority," and acknowledged that no statute explicitly permits water interest. *Id.* However, the Court said it was "not bound by [*Pierce*] in exercising [its] original jurisdiction." *Id.*

**[11]** The government contends on appeal that the Court thereby approved the award of water interest in circumstances like this. This, however, is not a case arising between states, and we are not the Supreme Court exercising original jurisdiction. The district court did not cite any authority to support an award of water interest. It did not discuss *Pierce* and its reliance on a statute that is not applicable here. Because neither case authority nor statutory authority authorize the district court's award of water interest, there appears to be no legal basis for an award. We do not foreclose the possibility of an equitable basis for such an award. *See Texas*, 482 U.S. at 132 n.8 ("We are unpersuaded . . . that 'water interest' . . . should be awarded unless and until it proves necessary."). But we do not believe that water interest is appropriate unless there is some factual basis for awarding more water than was originally taken so as to provide complete relief. Moreover, we do not have any explanation for why the court chose to award interest at the rate of two-percent as opposed to some other amount. The government's and Tribe's post-trial briefs before the district court requested this rate, but they gave no reason why this particular amount was appropriate. None has been provided to us.

**[12]** Because the award of postjudgment water interest is unprecedented in the lower courts, and because the district court did not explain the factual basis for the award, we

vacate the award of postjudgment interest and remand for further consideration by the district court. *See Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc) (noting remand is appropriate where the district court fails to "make a sufficient record of its reasoning to enable appellate review"). On remand, the district court should determine whether water interest is necessary to "compensate [the government and Tribe] for being deprived of [water] for the loss of time between the ascertainment of the damage and the payment by [TCID]." *See Dishman*, 269 F.3d at 989. The district court should explain the basis, if any, for an award of postjudgment water interest, and then, if appropriate, explain the reason for selecting a particular rate.

**[13]** The district court denied prejudgment interest. Awards of prejudgment interest, however, "ensure that an injured party is fully compensated for its loss." *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 195 (1995). There are no statutory restraints on awards of prejudgment interest. Unlike postjudgment interest, such awards are "governed by traditional judge-made principles." *Id.* at 194. Courts have further recognized that "a monetary award does not fully compensate for an injury unless it includes an interest component." *Kansas v. Colorado*, 533 U.S. 1, 10 (2001).

**[14]** The district court denied the government and Tribe prejudgment interest because it found the government's delay in bringing this suit was unreasonable, and that the delay, coupled with the government's accidental destruction of relevant documents, warranted the denial of interest. The district court's determination that the government unreasonably delayed in bringing this lawsuit, however, is not supported by the record. Congress did not create the government's cause of action under the Settlement Act until 1990. *See* Settlement Act §§ 101, 209(j)(3). As envisioned by the Act, the government and TCID attempted to settle this dispute, because the government was supposed to pursue settlement efforts before instituting judicial proceedings. *See* Settlement Act

§ 209(h)(1). Only when these negotiations failed did the government initiate the present action. The negotiation understandably could have continued even more than five years, given the length and bitterness of the underlying disputes. Thus we conclude that the government did not unduly delay filing this action.

[15] As to the accidental loss of certain documents, even if some of the documents lost may have had some relevance to this litigation, the district court itself did not deem that loss sufficient in and of itself to warrant denial of prejudgment interest. As we have already stated, prejudgment interest is to ensure parties here, including the Tribe, will be "fully compensated" for their loss. *City of Milwaukee*, 515 U.S. at 195; *cf. Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987) (noting that in considering an injunction a court should consider the interests of "each party").

[16] We therefore remand this issue to the district court for it to reconsider, in light of its explanation of the basis for awarding postjudgment interest, whether it should award prejudgment interest. If water interest is appropriate for postjudgment interest, we conclude it should be awarded prejudgment as well.

## VI. Challenges to the Amount of Water Ordered Recouped.

TCID, the government, and Tribe all appeal the total amount of water the district court ordered recouped. TCID contends the amount was too great and lacked support in the record. The government contends the district court erred in the other direction by erroneously accounting for gauge error and not awarding additional water recouped on the basis of Truckee spills after 1981. The Tribe independently contends the district court erred by not awarding recoupment for diversions of the Truckee between 1981 and 1984. We reverse the

district court on the calculation of gauge error, but affirm the calculations on all other issues.

TCID appeals the district court's order of recoupment on the basis of excess diversions of the Carson between 1974 and 1979 and for 1979-1980 spills of the Truckee. The district court determined that TCID had improperly diverted 45,175 af in 1974, 24,732 af in 1975, 44,168 af in 1978, and 58,946 af in 1979. The court further determined that there had been spills of the Truckee in the amount of 11,938 af and 12,193 af in 1979 and 1980 respectively.

TCID is not correct in its contention that the district court's calculations have no support in the record. In fact the calculations were based upon TCID's own expert's report. The district court's decision clearly stated that it credited the testimony of TCID's expert witness, Charles Binder, over that of the government's expert. Binder's reports on excess diversions of the Carson and spills of the Truckee reflected the exact values stated in the district court's decision. It is thus evident that the district court accepted Binder's calculations, and "we will not second guess its determination which was based on extensive testimony from experts for both sides." *U.S. v. Gila Valley Irrigation Dist.*, 31 F.3d 1428, 1434 (9th Cir. 1994).

[17] While we do not disturb the district court's general acceptance of TCID's expert witness evidence, we find the district court erred in accepting such evidence in one respect: the manner in which this expert report accounted for gauge error. The parties agree that the number of af in any diversion is based upon measurement of flow read from a gauge and that, for a variety of reasons, the actual flow may be more or less than measured flow. The parties thus agree that the government flow data based on these gauge measurements includes some margin of error, represented by a "confidence interval." As the district court implicitly found, the flow data

was sufficiently reliable for the government to meet its burden of proving damages with reasonable certainty.

[18] Nevertheless, the district court accounted for statistical uncertainty in the flow data by subtracting the confidence interval from the published quantities, effectively assigning all of the uncertainty against the Tribe. There was no evidentiary basis for preferring values at the lower bound of the margin of error to the government's published quantities, which were already adjusted to take account of river condition, and which TCID never showed to be skewed in the Tribe's favor. We therefore remand for the district court to recalculate the amount of the diversions based on the government's published quantities and without regard to the confidence intervals.

[19] Both the government and Tribe want more recoupment for 1981-1984, the government contending recoupment should have been awarded for spills and the Tribe for diversions. The district court denied recoupment for any 1981-1984 spills or excess diversions, because it found the government should have modified the terms of the 1973 OCAP in light of the increased water duties in the 1980 *Alpine* decree. The court was correct.

The D.C. court's order in *Tribe v. Morton* required the Secretary to ensure that all future OCAPs "give proper weight to the maximum farm headgate entitlements of both the *Orr Water Ditch* and *Alpine* decrees." 354 F. Supp. at 260. The Settlement Act affirms the determinations made in *Tribe v. Morton*. *See* Settlement Act § 209(j)(1). Thus, when the 1980 final *Alpine* decree raised the water duty of the Carson from 2.92 afa to 3.5 afa/4.5 afa, the amounts of the farmers' entitlements increased. The Secretary should have changed the 1973 OCAP to reflect the increase. *See Tribe v. Morton*, 354 F. Supp. at 260. The Secretary did not do so. In the district court, however, the government did not show that the diversions exceeded what the increased allotments should have been.

Because the post-*Alpine* OCAP did not conform to the order in *Tribe v. Morton* and also because the government failed to establish that TCID permitted diversions in excess of a properly calculated OCAP, the government has not shown it is entitled to recoupment for excess diversions during this period.

**[20]** The government is entitled, however, to recoupment for spills during 1981-84. TCID's obligation to comply with the water duties cannot excuse spills, because the water duties are limited by beneficial use.

## VII.    The District Court Did Not Err in Denying Attorneys' Fees and Costs.

TCID's final challenge to the district court's decision pertains to the treatment of the farmers. The district court determined that the farmers did not have any individual liability under its decision. The court, however, denied their motion to dismiss them from the suit and entered judgment against them along with TCID, so that they are bound by the judgment. The court also denied subsequent requests for attorneys' fees and costs because it found the farmers were not prevailing parties.

TCID argues that the district court erred "as a matter of law" by refusing to dismiss the farmers from this suit after finding they had no individual liability. However, in *EEOC v. Peabody Western Coal Co.*, 400 F.3d 774 (9th Cir. 2005), this court rejected a similar argument. There, the EEOC challenged a company's policy of favoring individuals from the Navajo Nation in its hiring. *Id.* at 776-78. The government sought to add the Navajo Nation as a party to ensure it would be bound by whatever judgment the court issued. *Id.* at 780. This court recognized a "judgment w[ould] not bind the Navajo Nation in the sense that it w[ould] directly order the Nation to perform, or refrain from performing certain acts." *Id.* However, including the Nation would "preclude [it] from

bringing a collateral challenge to the judgment." *Id.* The court thus concluded the Nation was a necessary party. *See id.*

**[21]** The same logic applies here. The district court's refusal to dismiss the farmers prevents their collateral challenge to the recoupment order. This is important given the history of this litigation, where collateral challenges have not been uncommon. *See TCID v. Secretary*, 742 F.2d at 532 (rejecting TCID's collateral attack on *Tribe v. Morton*); *see also Tribe v. Hodel*, 882 F.2d at 367 (recognizing that *TCID v. Secretary* was a collateral challenge to the decision in *Tribe v. Morton*). The district court's determination that the farmers had no liability did not require the court to dismiss them from the lawsuit and put them in a position to collaterally attack the judgment. *See Peabody Western Coal Co.*, 400 F.3d at 780.

TCID also argues the district court abused its discretion in denying the farmers' attorneys' fees under the EAJA as prevailing parties. *See* 28 U.S.C. § 2412(d). Nevada raises the related argument that the district court abused its discretion in denying costs. *See* 28 U.S.C. § 2412(a). We agree with the district court because the farmers/water rights holders, including Nevada, were not prevailing parties.

Under 28 U.S.C. 2412(a), a "prevailing party" in an action brought by the government is entitled to its costs. A "prevailing party" in such a case is also entitled to attorneys' fees "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). To qualify as a prevailing party, a litigant must obtain "a material alteration in the legal relationship of the parties [that is] judicially sanctioned." *Poland v. Chertoff*, 494 F.3d 1174, 1186 (9th Cir. 2007). This requires that a party "ha[ve] been awarded *some* relief by the court." *Id.* at 1186-87 (internal quotation marks and citation omitted). We review denial of fees for abuse of discretion. *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002).

Here the district court did not abuse its discretion in determining that the farmers had failed to obtain the requisite "judicially sanctioned" and "material alteration" in the relationship of the parties, so as to be considered a prevailing party. As the district court explained "judgment in this case was entered solely in favor the United States and the [Tribe]," so the government and Tribe were "the prevailing parties in this action."

**[22]** The farmers contend they nevertheless were prevailing parties because the district court did not impose individual liability on them. The dispute is about water, not money, and TCID, as the cause of the diversions, must effectuate the judgment. The district court's decision bars the farmers from any collateral challenge to the judgment in order to obtain greater rights and requires that farmers cooperate in the recoupment process. The district court's judgment was entered pursuant to Congressional directive in the Settlement Act to compensate the Tribe for the excess diversions TCID permitted that benefitted farmers. The farmers are not prevailing parties in this case.

We affirm the judgment as to attorneys' fees and costs.

## CONCLUSION

**[23]** For the foregoing reasons, the judgment of the district court with respect to prejudgment and postjudgment interest is vacated and remanded for further consideration. The judgment with respect to amounts of recoupment for excess diversions in 1974, 1975, 1978, 1979, and spills in 1979 and 1980 is vacated and remanded for recalculation of the effect of gauge error. The judgment with respect to spills from 1981-84 is vacated and remanded for a determination of the amount of water spilled during those years. The judgment of the district court is otherwise affirmed.

**AFFIRMED in part, VACATED in part, and REMANDED**. Each party is to bear its own costs.