NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

SEP 13 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-15507 |
| Plaintiff, | D.C. No. 3:95-cv-00757-HDM |
| and | |
| PYRAMID LAKE PAIUTE TRIBE OF INDIANS, | MEMORANDUM[*] |
| Intervenor-Plaintiff-Appellant, | |
| v. | |
| BOARD OF DIRECTORS OF THE TRUCKEE-CARSON IRRIGATION DISTRICT, individually, and as Representatives of the Class of all Water Users in the Newlands Reclamation Project and TRUCKEE-CARSON IRRIGATION DISTRICT, | |
| Defendants-Appellees, | |
| DODGE BROTHERS AND DODGE JR. FAMILY TRUST; et al., | |
| Intervenor-Defendants-Appellees. | |

_____

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court
for the District of Nevada
Howard D. McKibben, Senior District Judge, Presiding

Argued July 13, 2017, Resubmitted September 13, 2017
San Francisco, California

Before: GRABER and FRIEDLAND, Circuit Judges, and FOGEL,** District Judge.

This is the third appeal in a long-running action by the United States and the Pyramid Lake Paiute Tribe (the "Tribe") to recoup water that the Truckee-Carson Irrigation District ("TCID") willfully diverted from the Truckee River for irrigation purposes between 1973 and 1987, in violation of federally imposed operating criteria and procedures ("OCAP") and to the detriment of the Tribe.[1] *See United States v. Bd. of Dirs. of Truckee-Carson Irrigation Dist.* (*Bell II*), 723 F.3d 1029 (9th Cir. 2013); *United States v. Bell* (*Bell I*), 602 F.3d 1074 (9th Cir. 2010). The remaining dispute concerns only the Tribe's entitlement to recoupment for

---

** The Honorable Jeremy D. Fogel, Senior United States District Judge for the Northern District of California, sitting by designation.

[1] We need not reprise the history of this long and divisive dispute, which our court and others have fully recounted on numerous occasions. *See, e.g.*, *Nevada v. United States*, 463 U.S. 110 (1983); *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364 (9th Cir. 1989); *Truckee-Carson Irrigation Dist. v. Sec'y of Dep't of Interior*, 742 F.2d 527 (9th Cir. 1984); *United States v. Alpine Land & Reservoir Co.*, 697 F.2d 851 (9th Cir. 1983); *Pyramid Lake Paiute Tribe of Indians v. Morton*, 354 F. Supp. 252 (D.D.C. 1973).

1985 and 1986—an issue we left open in the previous appeal. *Bell II*, 723 F.3d at 1035. The district court denied any recoupment for those years, based on: (1) its determination that historic court orders precluded recoupment for certain months of 1985 and 1986; and (2) its refusal to consider evidence submitted by the United States and the Tribe to prove the amount of recoupment owed for the remaining months of those years. We now vacate the district court's judgment on second remand and remand for entry of judgment in accordance with this disposition.

1. As an initial matter, we reject TCID's contention that the Tribe is estopped from raising or has otherwise waived the arguments it now advances. The doctrine of res judicata does not bar the Tribe from challenging the district court's rulings in a direct appeal.[2] *See Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 539-40 (9th Cir. 1991) ("The doctrine of res judicata prohibits repetitive litigation, not appellate review of claims rejected by the district court."). Nor are the Tribe's arguments foreclosed by the law of the case. We expressly declined to reach the issues now presented in the previous appeal,[3] *Bell II*, 723

_____

[2] In any event, the district court's vacated prior rulings regarding recoupment for 1985 and 1986 have no preclusive effect. *See Durning v. Citibank, N.A.*, 950 F.2d 1419, 1424 n.2 (9th Cir. 1991) ("[A] decision that has been *vacated* has no precedential authority whatsoever.").

[3] Nor were the issues raised in this appeal necessarily decided by implication in *Bell I*, as TCID contends. Our recoupment analysis in *Bell I* focused on the district court's failure to account appropriately for the margin of error in certain gauge

3

F.3d at 1035, and we are not bound under that doctrine by the district court's prior rulings. *See United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998) ("The law of the case doctrine provides that 'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'" (quoting *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997))). To the extent TCID contends that the Tribe waived its arguments by failing to raise them in the district court and failing to contest certain prior rulings of that court, we disagree; the Tribe pursued the same positions in the district court that it now advocates and could not have challenged that court's rulings on those contentions until this appeal.

2. The district court held that recoupment was unavailable for any excess diversions of Truckee River water that occurred (1) from January 15 until November 15, 1985, and (2) from March 13 until June 30, 1986, because it interpreted orders issued by United States District Judges Walter E. Craig and Bruce R. Thompson in 1985 and 1986, respectively, *United States v. Orr Water Ditch Co.*, Equity No. A-3 (D. Nev. Jan. 15, 1985) ("Judge Craig's Order"); *United States v. Alpine Land & Reservoir Co.*, Civil R-183 (D. Nev. Mar. 13, 1986)

---

readings in calculating its initial recoupment award. 602 F.3d at 1084-86. That inquiry plainly did not encompass the questions now before us, nor did we impliedly endorse the recoupment calculation methodology employed at trial to the exclusion of all other potential, alternative methodologies.

4

("Judge Thompson's Order"), as categorically excusing TCID from complying with applicable OCAP during those periods. That reading is not supported by the plain language of Judge Craig and Judge Thompson's Orders, nor does it accord with the historical context in which those orders issued. We accordingly conclude that recoupment is available for any excess diversions that occurred during those portions of 1985 and 1986 in which OCAP were in effect, which includes (1) March 20 to September 30, 1985, (2) November 15 to December 31, 1985, and (3) all of 1986.[4] In addition, we agree with the district court that recoupment is available for the period January 1 to January 15, 1985, the date on which Judge Craig's Order issued.

3.      For those portions of 1985 and 1986 in which the district court concluded recoupment was available, the court nonetheless denied any award primarily on evidentiary grounds. Specifically, the district court determined that the United States and the Tribe had not supported their recoupment calculations with sufficient "evidence that was admitted in the government's case in chief." The United States and the Tribe had put forward expert calculations and supporting evidence; but the district court refused to consider that submission because the underlying data came from an exhibit that had only been "admitted for limited

---

[4] The Tribe does not dispute that there were no OCAP in effect from January 15 to March 20, 1985, or from September 30 to November 15, 1985.

5

rebuttal purposes" at trial and the calculation methodology was "entirely different" than that employed at trial—namely, calculation on a monthly, rather than an annualized, basis. The United States and the Tribe acknowledged as much, but urged the court to overlook those issues in an exercise of its expansive equitable authority to fashion relief in this action in equity, particularly given that the district court's own ruling limiting recoupment to certain months of 1985 and 1986 had necessitated a monthly calculation methodology and the exhibit relied on contained the only monthly data in the trial record. The district court refused to do so.

That ruling would ordinarily fall well within the district court's broad discretion over evidentiary matters, but we have made clear that "this is not ordinary litigation." *Bell II*, 723 F.3d at 1034. Indeed, in the prior appeal, we took the "extraordinary" step of withdrawing and amending our own mandate to avoid an inequitable result in this equitable proceeding. *See id.* The import of that action was unmistakable: Equity must be done in this action, and it would be inequitable to bestow a windfall on TCID, "which is at fault for the excess diversions," to the detriment of the Tribe and Pyramid Lake, "which the OCAPs are supposed to protect." *Id.*; *accord Bell I*, 602 F.3d at 1081 (emphasizing that the purpose of the federal statute that authorizes this recoupment action is "to protect the Tribe's enjoyment of Pyramid Lake"). Permitting TCID to escape liability for its repeated violations of federal law because the case is now in a posture that requires the

6

United States and the Tribe to base any request for recoupment on historical—and apparently uncontroverted—data that was admitted for a different purpose at trial plainly contravenes the spirit of *Bell II.*

That result would also offend the equitable doctrine of unclean hands, which "gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 815 (1945); *id.* at 814 ("[H]e who comes into equity must come with clean hands."). That doctrine takes on "wider and more significant proportions" where, as here, "a suit in equity concerns the public interest as well as the private interests of the litigants." *Id.* at 815. The Fallon Paiute Shoshone Indian Tribes Water Rights Settlement Act of 1990, Pub. L. No. 101-618, 104 Stat. 3289, which authorizes this suit, was, among other purposes, enacted to "fulfill the goals of the Endangered Species Act by promoting the enhancement and recovery of the Pyramid Lake fishery." Settlement Act § 202(f). Recovery is thus essential to the public interest as well as the interests of the Tribe. In light of those weighty equitable considerations and our efforts to ensure that an equitable remedy is available to the United States and the Tribe throughout the history of this litigation, it was an error to deny altogether recovery to the United States and the Tribe for 1985 and 1986.

4.    We have previously remarked on the importance of finality for all

7

interested parties in this litigation, which implicates the competing and significant interests of the reclamation system, the Tribe, and the environment. *See Bell II*, 723 F.3d at 1035. To that end, we believe that finally resolving the outstanding recoupment question is in the best interests of all parties. We have reviewed the parties' submissions in our court and the district court, and, exercising our broad discretionary authority to fashion an equitable remedy, we conclude that the Tribe is entitled to recoup a total of 8,300 acre-feet of water for the years 1985 and 1986. That amount is supported by historical data and is the most conservative of the figures put forward by the United States in the district court. Although it may not perfectly measure the volume of illegal diversions that may have occurred in 1985 and 1986, we conclude that 8,300 acre-feet is much more likely to be an underestimate than an overestimate of the amount of water that TCID improperly diverted and that TCID's procedural and methodological objections therefore should not preclude an award in that amount. We also conclude that finality in this litigation will yield the most equitable result for all parties even if the precise amount of the award is necessarily imperfect.

**VACATED AND REMANDED for the district court to enter judgment consistent with this disposition. Costs on appeal shall be awarded to Appellant.**